COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


JOEL LANNIGAN

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2503-10-1                              PER CURIAM
                                                         JULY 12, 2011
VIRGINIA BEACH DEPARTMENT OF HUMAN SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                           A. Bonwill Shockley, Judge

            (Lisa A. Broccoletti, on brief), for appellant.  Appellant submitting
            on brief.

            (Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
            Attorney; Elena E. Ilardi, Assistant City Attorney; Richard E.
            Garriott, Jr., Guardian *ad litem* for the minor child, on brief), for
            appellee.  Appellee and guardian *ad litem* submitting on brief.


        Joel Lannigan (father) appeals an order terminating his parental rights to his daughter.

Father argues that the trial court erred in terminating his parental rights to his daughter under Code

§ 16.1-283(C)(1) and (C)(2) because father was never offered any reasonable and appropriate

services to strengthen the parent-child relationship and to remedy substantially the conditions which

led to or required the continuation of the child's foster care placement.  Upon reviewing the record

and briefs of the parties, we affirm the decision of the trial court.

                                      BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On October 10, 2008, the Virginia Beach Department of Human Services (the Department) took emergency custody of the child and her three younger brothers, all of whom were residing with the child's mother and stepfather.[1] The children were removed due to the living conditions of the home. At the time of the removal, father did not reside in the home, but was living in Maryland with another family.[2]

In late October 2008, father contacted the Department to obtain the children's social security numbers, so that he could petition for custody. The Department sought a home study pursuant to the Interstate Compact for the Placement of Children (ICPC). A social worker from the Baltimore City Department of Social Services in Maryland contacted father about the home study. Father informed the social worker that he moved and was renting a room, so he did not have space to accommodate the children. He also told the social worker that he was "looking for assistance from emergency housing," but that he was "not in any position to be studied as a placement resource for the children."[3] Accordingly, the Baltimore City Department of Social Services disapproved the placement with father in April 2009.

The child remained in foster care for approximately two years prior to the trial court terminating father's parental rights. During that time period, father visited the child only twice, despite being in Virginia at least five times for hearings. He did not send the child any correspondence, cards, or gifts.

After hearing all of the testimony and evidence, the trial court terminated father's parental rights based on Code § 16.1-283(C)(1) and (C)(2). This appeal followed.

---

[1] The child's three younger brothers are not the subjects of this appeal.

[2] Father did not have his own residence in Maryland.

[3] Father testified that he placed his name on the Section 8 housing list, but that it would be five to seven years before housing would be available.

ANALYSIS

Father argues that the evidence was insufficient to terminate his parental rights under Code § 16.1-283(C)(1) and (C)(2) because the Department did not offer him reasonable and appropriate services to strengthen the parent-child relationship and to remedy substantially the conditions which led to or required the continuation of the child's foster care placement.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

In this case, father never provided, or realistically offered to provide, the most basic necessity for a child – a physical place to live. He readily admitted that his current living situation was not suitable, since he was renting a room.

In addition, father failed to cooperate with the ICPC home study, which was required in order for the Department to consider placing the child with him. See Code § 63.2-1000. Article III(d) of the ICPC states:

> The child shall not be sent, brought or caused to be sent or brought into the receiving state until the appropriate public authorities in

> the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

Id.

> Any child-placing agency, licensed pursuant to Subtitle IV (§ 63.2-1700 et seq.), local board or court that takes or sends, or causes to be taken or sent, any resident child out of the Commonwealth for the purpose of an interstate or intercountry placement shall comply with the appropriate provisions of the Interstate Compact on the Placement of Children (§ 63.2-1000 et seq.) or shall first obtain the consent of the Commissioner, given in accordance with regulations of the Board relating to resident children so taken or sent out of the Commonwealth.

Code § 63.2-1105(A).

Therefore, father's lack of cooperation with the ICPC home study prevented the Department from being able to consider placing the child with him. Furthermore, father had not notified the Department when he moved. The Department first learned that father moved to another home in Maryland from the Baltimore City Department of Social Services when they contacted him about the home study.

Father testified that he tried to obtain suitable housing. He placed his name on the waiting list for Section 8 housing; however, the wait for a home was between five and seven years. At the time of the trial, the child had been in foster care for two years, and father still did not have suitable housing.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Father argues that the Department did not make reasonable and appropriate efforts to assist him. "'Reasonable and appropriate' efforts can only be judged with reference to the

circumstances of a particular case.  Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

The Department informed father about the child's situation and encouraged him to stay in contact with the Department.  However, he did not do so, and in fact, did not notify the Department when he moved.  The Department initiated the ICPC home study when father indicated that he intended to seek custody of the children, but he did not cooperate with the ICPC home study.  He did not allow the Baltimore City Department of Social Services to visit his home, but instead indicated he did not have a suitable place for the children.  The Department arranged visitation between the child and father, yet father visited the child only twice while she was in foster care.  The Department encouraged father to send letters, cards, and gifts to the child, but he chose not to do so.  The Department clearly made reasonable and appropriate efforts to assist father, but father was not cooperative.

The trial court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).  Therefore, we need not consider whether the evidence was sufficient to terminate father's parental rights under Code § 16.1-283(C)(1).  See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 47 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.